# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LINDA ANN BORDEN,**

                    **Petitioner,**

**-vs-**                                    **Case No. 6:09-cv-481-Orl-31DAB**

**UNITED STATES OF AMERICA,**

                    **Respondent.**

_____/

## ORDER

This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by Linda Ann Borden. (Doc. No. 1, filed March 16, 2009)(the "§ 2255 motion"). Thereafter, Borden filed a memorandum in support of her § 2255 motion. (Doc. No. 4, filed April 20, 2009). The United States filed a response to the § 2255 motion (Doc. No. 14, filed July 31, 2009), to which Borden filed a reply (Doc. No. 24, filed September 28, 2009). Borden subsequently filed a motion to supplement the § 2255 motion (Doc. No. 28, filed November 27, 2009), to which the United States filed a response (Doc. No. 30, filed December 23, 2009).

In the § 2255 motion, Borden alleges ineffective assistance of counsel in ten grounds, some of which overlap and some of which have subparts. In her reply to the United States' response to the § 2255 motion, and in her motion to supplement the § 2255 motion, Borden adds an additional allegation that trial counsel was ineffective by failing to assert that she was not competent to stand trial Doc. No. 24 at 14; Doc. No. 28 at 3.

# I.    PROCEDURAL HISTORY.

On October 13, 2005, a grand jury returned an Indictment charging Borden with twenty-seven counts of aiding, assisting, procuring, counseling and advising the preparation and presentation to the Internal Revenue Service ("IRS") of false and fraudulent income tax returns in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2.  The grand jury alleged that Borden knew that deductions claimed on each return were more than the amount the taxpayer on whose behalf the return was prepared was lawfully entitled to claim.  In each count, the grand jury alleged the date, the county, the taxpayer(s), the year, the amount claimed and the amount to which the taxpayer(s) was entitled.  Case No. 6:05-cr-181-Orl-31DAB (the "Criminal Case"), Doc. No. 1.

The case was tried to a jury beginning on March 19, 2007.  Criminal Case, Doc. No. 85.  On March 26, 2007, the jury returned verdicts of guilty as to each count of the Indictment. Criminal Case, Doc. No. 63.  The Court sentenced Borden to 74 months in jail, one year of supervised release, a $2,700 special assessment, and costs of prosecution.  Criminal Case, Doc. No. 77.  The Judgment and Commitment Order was entered on June 14, 2007.  *Id.*

Borden's trial counsel filed a direct appeal on her behalf.  He argued three issues: (1) that the filing of a tax return is a required element of 26 U.S.C. § 7206(2) and, therefore, the evidence was insufficient as to Count Fourteen of the Indictment; (2) that the District Court erred in determining a tax loss of $4,378,463; and, (3) that the District Court erred in enhancing the sentencing guidelines calculation under U.S.S.G. § 3B1.1(c) based on Borden's role in the offense.  Doc. No. 14-13. The United States Court of Appeals for the Eleventh Circuit affirmed the trial court's ruling on each of these issues, and a mandate issued on April 11, 2008.  Criminal Case, Doc. No. 98.

## II.    SUMMARY OF THE EVIDENCE AND DEFENSE PRESENTED AT TRIAL.

At trial, the United States introduced certified records of the IRS, including transcripts documenting information regarding tax returns underlying the counts of the Indictment.  Defense counsel cross-examined the document custodian regarding the reliability of the transcripts, and the lack of verification of the accuracy of the information submitted by a taxpayer. Criminal Case, Doc. No. 86 at 202-26.

An IRS Special Agent testified that, while working undercover using the name Bruce Coleman/Clayton, he attended meetings sponsored by Borden's companies and met with Borden about her role in preparing false tax returns.  Criminal Case, Doc. No. 89 at 829-53.  Recordings of his meetings with her were played for the jury.  *See* Doc. Nos. 36-1 and 36-2 (transcripts of the recordings).  At the first meeting, Mark Hayes, assisted by John Kenney, made the presentation in Borden's absence about the tax preparation and business consulting services offered by Borden for a fee through her company NexClick.  Doc. No. 36-1.  Subsequently, the undercover agent met personally with Borden.  Doc. No. 36-2.  Borden explained her NexClick corporation system and her form of accounting.  She told the undercover agent that by setting up a corporation the taxpayer could disguise personal expenses as business deductions. *See, e.g., id.* at 30, 41-44.  One of her explanations of the concept was as follows:

> So I try to tell my clients, if you feel dry cleaning, car washes and hair and nails are imperative to how you do your job 'cause you're in sales, then by all means, take them.  But I don't want to see a 19.95 hair clipper on your credit card bill every month, because an IRS agent is gonna zoom right in on that and pull you on it.  But if you buy gift certificates a couple times a year, no one is gonna catch that.  And you give 'em to yourself and your favorite clients.  So for my make-up, my hair and nails, I buy gift certificates a couple times a year.  Like twice

> a year, I go and buy 5, $600 gift certificates and I use them throughout the year.

*Id.* at 44-45.

Individuals who followed Borden's system, and for whom Borden prepared tax returns, also testified – specifically Mark Bullock (Counts Twenty-Two, Twenty-Four, Twenty-Six and Twenty-Seven); Clifford and Janice Dubbin[1] (Counts One, Twenty, Twenty-One); William Holley (Counts Two and Twenty-Three); John Rosinski (Counts Three, Four, Five, Twelve); Pamela Gano (Count Nineteen); Brian White (Counts Ten and Fourteen); Joseph Frey (Count Thirteen); William Fuqua (Count Nine); Paul Curtin (Counts Fifteen, Sixteen, Eighteen); George and Estell Brickhouse (Count Eleven); Brock Smith (Count Twenty-Five); and, Genester Wilson King (Counts Six, Seven, Eight).[2] Each taxpayer witness testified that Borden prepared tax returns that showed deductions that were not supported by information or documents provided by the taxpayer to Borden. Each taxpayer witness was audited by the IRS, and certain deductions were disallowed as reflected in the last two columns of each count of the Indictment. Revenue agents who audited various of these taxpayer witnesses' tax returns also testified. *See generally* Criminal Case, Doc. Nos. 85-90 (criminal trial transcript).

Defense counsel lodged objections to testimony and exhibits, some of which were sustained by the Court. Defense counsel cross-examined many of the taxpayer witnesses, eliciting testimony such as the following:  that much of the information on the tax returns was correct and based on supporting documents; that the taxpayer witness was well educated; that the taxpayer witness actually

---

[1]  The Dubbins' attorney also testified.

[2]  Some of these taxpayer witnesses also had memberships in or worked with Borden through her various corporate entities.

-4-

incurred expenses of the type that might be legitimately deductible; that the taxpayer witness had previously prepared his own tax returns or had them prepared by others; that the taxpayer witness signed the returns prepared by Borden under penalty of perjury; and, that Borden was not to receive any portion of a refund any taxpayer witness received from the IRS. In response to defense counsel's question, taxpayer witness White testified as to Count Fourteen of the Indictment, that a tax return that he had asked Borden to correct was mistakenly mailed by his wife to the IRS before the corrections were made. *Id.*

Individuals who previously worked for Borden testified about three memoranda in which they advised Borden that individuals had complained that information she provided regarding completion of tax returns was wrong. Another individual who previously worked for Borden testified that she had returned taxpayer information and documents to Borden because there was insufficient information to complete the tax returns. Some of Borden's former employees testified that only Borden had the authority to approve a final tax return. *See* Criminal Case, Doc. No. 88.

Finally, IRS Revenue Agent Robert Combs testified regarding a summary schedule he prepared, Government's Exhibit 148. The summary scheduled reflected as to each count in the Indictment the business expenses claimed on the return, the business expenses disallowed after an IRS audit, and the amount by which the business expenses were overstated. The summary schedule also included the tax or refund due as shown on each tax return and the tax deficiencies or denied tax refund totals. *See* Doc. No. 36-3. Agent Combs also testified regarding relevant Internal Revenue Code provisions. Defense counsel cross-examined Agent Combs. On cross-examination, Agent Combs acknowledged the numerous avenues of review and appeal of IRS decisions that a taxpayer

could follow if the taxpayer wished to challenge an auditor's decision to deny certain deductions. Criminal Case, Doc. No. 90 at 870-96.

In closing, defense counsel argued that the United States had not proved that Borden willfully caused false tax returns to be filed. He contended that if errors were made, they were based on Borden's good-faith interpretation of the tax laws. He reviewed the testimony of taxpayer witnesses about the actual business expenses they had incurred. As to the Whites, he reiterated the argument made in support of his motion for judgment of acquittal that a draft tax return was mistakenly filed before it was corrected and in final form, thus showing that the return submitted was not the one that Borden intended to be filed without corrections. Criminal Case, Doc. No. 90 at 924-40.

## III.    STANDARD OF REVIEW.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88.[3] A court must adhere to "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

---

[3] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

As observed by the Eleventh Circuit, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir.1992) (citation omitted).  The convicted defendant bears the burden of proving that her counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Thus, the petitioner must prove "by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994).

## IV.    ANALYSIS.

Borden's ineffective assistance of counsel claims fall into the following categories: (A) Failure to Challenge the Sufficiency of the Indictment (Ground One); (B) Conflict of Interest (Grounds Two and Three); (C) Failure to Advise Defendant Adequately About A Plea Agreement(Ground Three); (D) Failure to File Motion to Suppress (Ground Six); (E) Ineffective Trial Strategy (Grounds Two, Four, Five, Six, Seven); (F) Sentencing Issues (Grounds Seven, Eight, Nine and Ten); (G) Ineffective Appellate Strategy (Ground Seven); and, (H) Supplemental Allegation Regarding Competency to Stand Trial.

*A.      Failure to Challenge the Sufficiency of the Indictment.*

Borden argues that defense counsel was ineffective by failing to move to dismiss the Indictment due to the vagueness of the allegations, including the failure to allege the date each tax return was filed, her role in producing each tax return, and why each tax return was "materially wrong." Doc. No. 4 at 2. She also contends that the Indictment was insufficient because it did not allege facts necessary to support sentencing guidelines enhancements, including the exact dollar amount of the tax loss and facts showing that the crime involved sophisticated means. Doc. No. 24 at 3-4.

"An indictment is sufficient 'if it: (1) presents the essential elements of the offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999)(quoting *United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir. 1998)(en banc)). The elements of a violation of 26 U.S.C. § 7206(2) are that the defendant aided or assisted in the preparation or presentation of an income tax return that was false in a material way as charged in the indictment, and that the defendant acted willfully and knowingly. *United States v. Borden*, Case No. 6:05-cr-181-Orl-31DAB, 2007 WL 1128969 (M.D. Fla. April 16, 2007). "[A] person may be convicted of assisting in the preparation and presentation of fraudulent tax returns under 26 U.S.C. § 7206(2) if that person either prepares *or* presents the relevant return." *United States v. Borden*, 269 F. App'x 903, 905 (11th Cir. 2008).[4]

---

[4] Unpublished decisions of the Eleventh Circuit cited herein represent persuasive authority, rather than binding precedent. *See* 11th Cir. R. 36-2 and I.O.P. 6.

The Indictment alleged each of these elements.  Specifically, it alleged that Borden "did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service of false and fraudulent income tax returns of the taxpayer indicated below, for the calendar year indicated below[.]" Criminal Case, Doc. No. 1 at 1.  It alleged that each income tax return was false in a material way because in each return it was "represented that the said taxpayer was entitled under the provisions of the internal revenue laws to claim deductions in the approximate total sum indicated below; whereas, as the defendant then and there well knew and believed, the deductions which the said taxpayer was lawfully entitled to claim for said calendar year were in the approximate total sum of not more than the amount indicated below[.]" *Id.* It further alleged that the Defendant acted willfully and with knowledge of the falsity of each tax return.  *Id.*  Because the date that each tax returned was filed is not an element of the offenses charged, a motion to dismiss the Indictment on that basis would have been unavailing.

Borden argues that the Indictment did not give her adequate notice of facts that the Court would consider for purposes of computing the sentencing guidelines, specifically the tax loss, the use of sophisticated means and her role in the offense.  Facts supporting these sentencing guidelines factors were not, however, elements of the offense.  The Eleventh Circuit has held that there is no constitutional right to have sentence-enhancing facts found by a grand jury and charged in the indictment when, as here, the Court applied the guidelines in an advisory fashion.  *United States v. Smith*, 253 F. App'x 841, 843 (11th Cir. 2007)(citing *United States v. Thomas*, 446 F.3d 1348, 1355 (11th Cir. 2006)).  Therefore, a motion to dismiss the Indictment on this basis would also

have been unavailing. Counsel's assistance cannot be deemed ineffective because counsel failed to file unmeritorious motions.

B.    *Conflict of Interest.*

Borden alleges that a conflict-of-interest arose between her Court-appointed counsel and the United States Attorney's Office because the prosecutor engaged in prosecutorial misconduct by arranging "for defendant to be represented by [defense counsel] prior to defendant being charged." Doc. No. 4 at 2.  The record evidence reveals, however, that defense counsel was selected and appointed by the presiding Magistrate Judge after consideration of a financial affidavit presented to the Court with a request for pre-indictment counseling. Criminal Case, Doc. No. 10 and Doc. No. 17 at 3.  Because there is no evidence that the United States selected the attorney appointed to represent Borden, Borden has not sustained her burden of showing that her attorney had an actual conflict of interest that adversely affected his performance.  *See, e.g., Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001).

C.    *Failure to Advise Defendant Adequately About A Plea Agreement.*

Borden alleges that the United States offered her a plea agreement under which a "36-month plea deal [was] offered." Doc. No. 24 at 5.[5]  She alleges that defense counsel told her that he did not believe the United States had a case because Borden did not take a percentage of the tax refunds,  and that he inaccurately estimated that, if convicted, she would face three to five years imprisonment.  Doc. No. 24 at 5, 7.  She asserts that, but for her counsel's failure to tell her about

_____

[5]  There is no evidence in the record regarding the offer of a plea agreement or the terms of such agreement.

the "improbability of acquittal," the United States "98% conviction rate" and the benefit of the plea agreement offered, she "would have accepted the plea deal . . . ." Doc. No. 24 at 5-6.

The Eleventh Circuit applies the standard set forth by the United States Supreme Court in *Hill v. Lockhart*, 474 U.S. 52 (1985), to claims that but for counsel's ineffective assistance, petitioner would have pleaded guilty. *Coulter v. Herring*, 60 F.3d 1499, 1503 n.7 (11th Cir. 1995). Under that standard, to establish prejudice Borden must show that there is a reasonable probability that, but for counsel's errors, she would have pleaded guilty. *Cf. Hill*, 474 U.S. at 59 ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty . . . ."). The Eleventh Circuit has also stated that "after the fact testimony concerning [a] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, [the petitioner] would have accepted the plea offer." *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991).

Borden has alleged that counsel performed ineffectively and that, but for that ineffective performance, she would have pleaded guilty pursuant to a plea agreement that exposed her to a maximum sentence of thirty-six months of imprisonment. The record neither conclusively refutes or supports Borden's allegations. Consequently, the Court will hold an evidentiary hearing on this issue. *See, e.g., Ramirez v. United States,* 315 F. App'x 227, 230 (11th Cir. 2009)(based on petitioner's non-frivolous allegation that she would have pleaded guilty if properly advised, an evidentiary hearing is required).

D.      *Failure to File a Motion to Suppress*.

Borden alleges that she received ineffective assistance of counsel because defense counsel did not file a motion to suppress the summary exhibit used at sentencing that showed that Borden had prepared many tax returns, in addition to those underlying the Indictment, that contained false information.  These additional tax returns had been identified in information seized from a search of Borden's computers.  Criminal Case, Doc. No. 91 at 18.  Borden contends that the fruits of these searches should have been suppressed because the search warrants did not contain an off-site computer search protocol that would protect from "a random or general examination of other documents which might contain personal or sensitive information . . . unrelated to the alleged criminal activity."  Doc. No. 24 at 25.

In order to prevail on her claim, Borden must establish "(1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence."  *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006).  Borden's argument on this ground fails because she has not established that a Fourth Amendment claim would have been meritorious.

The Fourth Amendment provides that no search warrant shall issue except "upon probable cause, supported by Oath or affirmation . . . .."  The search warrants authorizing the search of Borden's home and office, including computers found therein, are supported by sworn affidavits presenting probable cause to believe that evidence of the crime of preparation of false tax returns,

-12-

among others, would be found at the locations to be searched. Doc. Nos. 14-10, 14-11. Borden does not contend that the search warrants were not supported by probable cause.

The Fourth Amendment also provides that a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." A warrant is sufficiently particular "when it enables the searcher to reasonably ascertain and identify the things authorized to be searched." *United States v. Wuagneaux*, 683 F.2d 1343, 1348 (11th Cir. 1982). In this case, each search warrant described specifically the evidence to be seized, including all client records used or resulting from the preparation of tax returns.

Borden argues that because the search warrants did not provide a protocol for search of computers to identify this specifically described evidence, the warrants did not have sufficient particularity to protect her from a general, exploratory search. The Eleventh Circuit does not require that a search warrant contain an off-site search protocol in order to satisfy the particularity requirement of the Fourth Amendment. In *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007), the Eleventh Circuit considered on direct appeal whether an off-site search of images of the hard drives of computers obtained pursuant to a search warrant should be suppressed because, among other things, the search warrant and supporting affidavit did not identify a protocol for searching the computers to ensure that the search remained within the limits of the search warrant. The Eleventh Circuit found that the search and seizures were reasonable, even absent a search protocol, because there was no evidence that suggested that the agents flagrantly disregarded the terms of the search warrant. *Id.* at 1290-91.[6]

_____

[6] *In re Search of: 3817 W. West End, First Floor, Chicago, Illinois 60621*, 321 F. Supp. 2d 953 (N.D. Ill. 2004), cited by Borden, is not binding on this Court. In that case, a Magistrate Judge

Similarly, in the present case there is no evidence suggesting that agents who searched Borden's computers flagrantly disregarded the terms of the search warrant. The IRS agent who supervised the search of the imaged hard drives testified at trial that the imaged hard drives were first searched to identify information that the case agent identified as within the scope of the search. Criminal Case, Doc. No. 88 at 667-69.   The case agent then reviewed a CD of the list of files located by the specialists and selected files that should be printed. *Id.* at 670-71.  Borden has not cited any document printed  or information presented to the Court that was obtained from the computer searches that was outside the scope of the particularly described evidence to be seized set forth in the warrants.  Thus, there is no evidence that the absence of a computer search protocol resulted in a random, generalized rummaging through the computer-stored information.

Under these circumstances, as in *Khanani*, the record supports a finding that a conscious effort was made to search only for information within the limits of the search warrants.  As such, Borden has not established that a motion to suppress the evidence that led to the preparation of the summary exhibit used at sentencing would have been meritorious.  Counsel cannot be ineffective for failing to raise or pursue a meritless issue.

E.      *Ineffective Trial Strategy.*

Borden contends that defense counsel was ineffective by not challenging evidence and witnesses presented by the United States at trial and by failing to present various defense theories and evidence to support those theories.  The Eleventh Circuit has observed that "a strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective

---

 required that a search protocol be included in a computer search warrant.

if counsel first adequately investigated the rejected alternatives. . . . Even if in retrospect the strategy appears to have been wrong, the decision will be held to be ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. . . . The burden of proof to establish ineffectiveness and prejudice is on the petitioner." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)(internal citations omitted). Accordingly, "courts 'should always presume strongly that counsel's performance was reasonable and adequate.' . . . and, 'a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy.'" *Rogers v. Zant*, 13 F.3d at 386 (11th Cir. 1994)(quoting *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992), and *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993)).

### 1.    Theory of Defense and Lack of Presentation of Defense Evidence

Borden contends that defense counsel was ineffective because he did not present a plausible defense, he did not introduce evidence on her behalf, and he did not rebut evidence presented by the United States. The record reveals, however, that defense counsel had a cogent theory of the defense which he developed through cross-examination of the government's witnesses and in his closing argument. That theory, in sum, was that Borden did not willfully prepare tax returns that she knew to be false. Among other things, he elicited testimony from the taxpayer witnesses that many of them did have business expenses, that many of them did not review the tax returns prepared by Borden for accuracy, and that they did not appeal the IRS audit decisions. He argued that Borden interpreted the complicated tax code in good faith based on her research, and even if her interpretation was wrong, that such an error was insufficient to find that she acted in knowing

disregard of a legal duty.  Thus, Borden's contention that defense counsel did not present a plausible theory of defense is not supported by the record.

Borden's assertion that defense counsel did not object to evidence offered by the United States is similarly not supported by the record.  The trial transcript reflects that defense counsel objected to many of the United States' exhibits and to questions posed by the prosecutor.  *See also* Criminal Case, Doc. No. 62 (exhibit list).

Borden also contends that defense counsel was ineffective by failing to raise unspecified issues at trial and by failing to introduce "defense evidence and witnesses supplied by the defendant," including evidence about the formation, foundation and working of Borden's corporations. Doc. No. 4 at 3-4.  Except as discussed herein, Borden has not stated with specificity what evidence or witnesses she contends defense counsel should have presented or the issues that she contends  should have been raised.  Thus, her assertion that defense counsel was ineffective for failure to introduce unidentified evidence and witnesses and raise unidentified issues is purely speculative.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)(recognizing the vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

2.      **Failure to Accept Mistrial and To Move to Dismiss All Counts of the Indictment.**

Borden asserts that the Court offered defense counsel a mistrial, which her attorney erroneously failed to accept.  The record reflects, however, that defense counsel moved for a mistrial, which motion was denied by the Court.  Criminal Case, Doc. No. 88 at 580-81.  Therefore, there is no factual support for Borden's position.

Borden also contends that defense counsel erred by moving for dismissal of only Count Fourteen of the Indictment, rather than moving to dismiss all counts of the Indictment. The record reflects, however, that defense counsel moved for a judgment of acquittal as to all counts of the Indictment. Criminal Case, Doc. No. 90 at 900. Therefore, there is also no factual support for this position.

### 3.      Failure to Call Tax Expert.

Borden asserts that defense counsel was ineffective because he did not call an expert witnesses in taxation to testify that the deductions on the tax returns she prepared were proper and to explain how the taxpayers' rights were violated. Doc. No. 4 at 4. "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. Unit A Oct. 16, 1980). Borden has not identified any tax expert that was prepared to so testify. Moreover, because the evidence showed that Borden and taxpayer witnesses for whom she prepared tax returns could not provide documentation or other support for the claimed deductions, and based on Borden's statements to the undercover agent about her method to disguise personal expenses as business expenses, Borden is merely speculating that a tax expert would have found the deductions taken to have been appropriate. Under these circumstances, Borden has not overcome the strong presumption that defense counsel's performance was reasonable and that the decision not to call an expert in taxation was sound trial strategy. *See Chandler*, 218 F.3d at 1314.

### 4.     Diminished Capacity/Intoxication Defense.

Borden asserts that defense counsel was ineffective because he did not investigate and present evidence of her "mental and physical incapacitation during" the time of the crime.  Doc. No. 1 at 8. Borden argues that this investigation would have shown that she had diminished capacity due to her psychological condition and/or intoxication and, therefore, she was unable to form the intent necessary to commit the charged crimes. Borden contends, apparently arising from this diminished capacity/intoxication defense, that defense counsel erred by failing to ask for a jury instruction regarding fraud.[7]

The record reflects that defense counsel did investigate her mental and physical condition. Defense counsel retained a psychiatrist to review records from Borden's doctors regarding her mental and physical condition and render an opinion regarding her competency and her mental state at the time of the events underlying the Indictment.  Doc. No. 24-1.  The psychiatrist opined the Borden was competent.  He had insufficient information, however, to render an opinion as to her mental state at the time of the events underlying the Indictment.  *Id.* at 5.

Borden contends that defense counsel should have conducted a more thorough investigation of her condition at the time of the crime.  The Eleventh Circuit has observed, however, that the decision whether, and to what extent, to conduct a particular investigation can be a reasonable strategic decision.  *Rogers*, 13 F.3d at 387.  "Sometimes, a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course."  *Id.*

---

[7]  Specifically, Borden writes: "Counsel was ineffective when he did not provide or request sufficient jury instruction for prosecution of a fraud conviction."  Doc. No. 4 at 3.  She provided no other information about what jury instruction she contends should have been requested.

In this case, Borden concedes that defense counsel made a strategic decision not to pursue the diminished capacity defense, because he thought such evidence "would  taint defendant['s] character."  Doc. No. 1 at 8.

Finally, defense counsel's strategic decision not to pursue a diminished capacity defense cannot be found to be unreasonable based on the controlling law in this Circuit.  In *United States v. Cameron*, 907 F.2d 1051 (11th Cir. 1990), the Eleventh Circuit observed that psychiatric evidence will only rarely negate specific intent, and that a court should carefully consider whether to admit such evidence in light of the risk that the evidence would present "a dangerously confusing theory of defense more akin to justification and excuse than 'a legally acceptable theory of lack of *mens rea*.'"  *Id.* at 1067 (quoting *United States v. Pohlot*, 827 F.2d 889, 906 (3d Cir. 1987)).

The crimes with which Borden was charged involved preparation of twenty-seven false tax returns that required some knowledge of tax law and skill in preparing the forms required.   In light of that evidence, defense counsel could reasonably have concluded that, in the absence of an opinion by the examining psychiatrist about Borden's condition at the time of the crimes, it would be unlikely that the Court would permit psychiatric evidence under *Cameron*, because the evidence would be more akin to excuse than actually negating specific intent.  Under these circumstances, defense counsel performed in a constitutionally acceptable way by not further pursuing this defense.  *Cf. Rogers*, 13 F.3d at 387 (finding defense counsel's decision to not present evidence of voluntary intoxication reasonable under the circumstances).

### 5. Failure to Present Evidence of IRS Misconduct.

Borden also contends that defense counsel should have presented evidence of misconduct by the IRS by cross-examining Revenue Agent Tingle about how she was able to conduct so many audits, why audit documents were returned to Borden unopened, why tax deficiencies were assessed and placed on taxpayer transcripts before the time to appeal these findings passed, and about a statement from an unidentified person that "'my supervisor said issue 100% disallowances no matter what she (petitioner) turns in." Doc. No. 24 at 23. Revenue Agent Tingle gave detailed testimony about tax returns filed by taxpayers Paul and Joyce Curtis, Joseph and Koreen Frey, William and Susan Fuqua, Richard and Pamela Gano, William and Betty Holley, John Rosinski, Brian and Vanessa White, and Genester S. Wilson-King, supported by her audit workpapers. Defense counsel cross-examined Tingle about her audit workpapers and transcripts. Criminal Case, Doc. No. 89 at 809-22. Borden has not identified any portion of those workpapers that would support a contention that any deduction was disallowed without reviewing documents submitted by Borden or the taxpayers, and she has not presented any information to link the statement about disallowing everything Borden turned in to Revenue Agent Tingle or to any other IRS Revenue Agent involved in the present case. Accordingly, Borden has not rebutted the strong presumption that defense counsel's strategic decisions about how and to what extent to cross-examine Tingle were reasonable, or shown how further cross-examination likely would have affected the outcome of the trial.

### 6.     Failure to Object to Government's Exhibit 148.

Borden asserts that defense counsel was ineffective by failing to object to Government's Exhibit 148, which she describes as a summary exhibit that disclosed the IRS calculation of tax loss as to tax returns that were not the subject of any of the charges in the Indictment.  *See* doc. No. 24 at 21.  Borden submits that Exhibit O to her reply to the United States' response to the § 2255 motion is Government's Exhibit 148 introduced at trial.  Doc. No. 24-13.

The record reflects, however, that there were two summary exhibits.  *Compare* Doc. No. 24-13 (Borden's Exhibit O) *with* Doc. No. 36-3  (Government's Exhibit 148).  Exhibit O to Borden's § 2255 motion is a summary chart entitled "Audit Adjustments" that was submitted to the probation office and used only at sentencing. *See* Presentence Report.   Government's Exhibit 148 is a summary chart prepared by IRS Revenue Agent Combs.  Government's Exhibit 148 addresses only the tax returns that supported the charges in the Indictment.  *See* Doc. No. 36-3 at 2-3.  Therefore, there is no factual basis to support Borden's contention that defense counsel permitted evidence of tax loss related to tax returns that were not the subject of the Indictment to be presented to the jury.

### 7.     Failure to Rebut Evidence of Financial Gain From Crime.

Borden asserts that defense counsel was ineffective by failing to challenge the evidence that she had financial gain from the criminal activity.  Evidence was presented at trial that Borden charged a fee for her services in connection with the charged criminal activity. *See*, *e.g.*, Doc. No. 36-1 at 25-26. Borden cites to an IRS report of changes to her and her businesses' income tax returns as evidence that she suffered a loss from her business activity.  *See* Doc. No. 24-11.  These

reports are dated July 9, 2009, well after the trial of the case concluded. As such, this was not evidence that could have been presented at trial. Borden does not specify the other evidence that she contends was available at the time of trial to rebut the evidence that her motive was to obtain financial gain from her criminal activity. As such, her claims that defense counsel was ineffective in this respect is not supported by the record.

F.  *Sentencing Issues.*

Borden contends that defense counsel was ineffective by failing to present evidence and objections regarding the amount of tax loss, sentencing guideline enhancements based on sophisticated means and role in the offense, the failure to reduce the guideline range for acceptance of responsibility and other sentencing mitigation factors. She also contends that defense counsel was ineffective by failing to argue an *ex post facto* violation in application of the advisory sentencing guidelines. (Grounds Seven, Eight, Nine and Ten).

1.  **Tax Loss.**

Section 2T1.1 of the advisory sentencing guidelines directs that the base offense level for the offenses charged in the Indictment is determined by the tax loss. The summary chart prepared by Agent Combs showed that the tax loss as to the individuals whose tax returns were charged in the Indictment was $655, 916.00. Doc. No. 36-3. The United States presented testimony of an IRS Special Agent at sentencing about relevant conduct regarding other false tax returns prepared by Borden, which resulted in a tax loss of $4,378,463.00. *See, e.g.,* Criminal Case, Doc. No. 91 at 16-24.

Borden contends that defense counsel was ineffective by failing to challenge the relevant conduct loss figure. The record reflects, however, that defense counsel raised several challenges to the government's evidence.[8] Defense counsel cross-examined the case agent who testified at sentencing about the relevant conduct tax loss, adducing testimony that it was the agent's understanding that this larger loss figure was merely an estimate, not the final assessment. Defense counsel also presented evidence that, in a civil case, the IRS had estimated the tax loss to be $15 million. Defense counsel argued that because there were differing opinions from the IRS about the total tax loss, the Court should rely solely on the tax loss underlying the counts of conviction. *See* Criminal Case, Doc. No. 91 at 29-38, 42. Thus, Borden's contention that defense counsel did not challenge the United States' evidence of tax loss is not supported by the record.

Borden also contends that defense counsel was ineffective by failing to argue that the tax loss estimate could not be accepted because it was not based on final assessments. The Eleventh Circuit has held, however, that the sentencing guidelines do not require the United States to establish the amount of loss with precision. *United States v. Jordan*, No. 09-14202, 2010 WL 1408274, at * 3 (11th Cir., April 9, 2010). "'[T]he guidelines contemplate that the court will simply make a reasonable estimate based on the available facts.'" *Id.* (quoting U.S.S.G. § 2T1.1 cmt. n. 1.). An attorney is not ineffective by failing to raise arguments that are not supported by the law.

---

[8] Borden argues that defense counsel should have relied upon a tax loss spreadsheet that she prepared, *see* Doc. No. 4 at 4, but she did not produce a copy of this spreadsheet in support of her papers

### 2. Sophisticated Means.

Borden asserts that defense counsel was ineffective because he did not object to the sentencing guidelines enhancement for sophisticated means used during the crime. The guidelines commentary describes sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an office," including "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2T1.1(b), cmt. n.4. In the present case, the evidence established that Borden advised her clients to create corporations through which to disguise personal expenses as business expenses. Based on these facts, an objection to the enhancement for use of sophisticated means would not have been meritorious. *See, e.g., United States v. Suarez*, 364 F. App'x 602, 605 (11th Cir. 2010). Counsel is not ineffective for failing to raise objections that are not supported by the facts.

### 3. Role in the Offense.

Borden argues that defense counsel was ineffective by failing to argue that she should have received only a two-point enhancement for role in the offense, rather than the four-point enhancement as an organizer or leader. *See, e.g.,* Doc. No. 4 at 5. This argument is not supported by the record.

The presentence report contains a recommendation that Borden receive a four-level increase for her role as an organizer or leader. Under U.S.S.G. § 3B1.1(a), the organizer or leader four-level enhancement applies only as to criminal activity involving five or more participants. If a defendant is an organizer, leader, manager, or supervisor in other criminal activity, then a two-level

enhancement applies. U.S.S.G. § 3B1.1(c). Defense counsel objected to the four-level enhancement, arguing that Borden was the only person charged in the Indictment. This objection was sustained. The Court found that the United States had not established that the criminal activity involved five or more participants, but, based on the number of Borden's employees and individuals soliciting clients for her, that the United States had established by a preponderance of the evidence that a two-level increase for Borden's role in the offense was warranted under U.S.S.G. § 3B1.1(c).

### 4.    **Acceptance of Responsibility**.

Borden asserts that defense counsel erred by failing to argue that she should receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. This guideline provides, however, that the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.,* cmt. n.2. There are rare circumstances in which the reduction is allowed for a tried and convicted defendant, such as where she went to trial only to assert and preserve constitutional and other issues that do not relate to factual guilt. *Id.*

The record reflects that Borden pleaded not guilty and put the United States to its burden of proof at trial. She does not cite to any evidence in the record that she admitted participating in the crime or otherwise cooperated with the United States before trial. Therefore, there is no factual support for her contention that defense counsel was ineffective because he did not object to the failure to give her a two-level reduction for acceptance of responsibility when no facts existed to support such an objection.

### 5. Mitigating Factors.

Borden contends that defense counsel was ineffective by failing to request a downward departure from the sentencing guidelines "on the basis of medical, obstacles overcome, caregiver for elderly parents and only biological and emotional support of a then 21 year old son." Doc. No. 4 at 5. The record reflects, however, that defense counsel and Borden personally brought Borden's personal circumstances to the attention of the sentencing judge. *See, e.g.,* Criminal Case, Doc. No. 71 (sentencing memorandum); Criminal Case, Doc. No. 91 at 48-53 (Borden's statement to the Court at sentencing) and 57-62 (defense counsel's argument to the Court at sentencing).[9] The Court expressly took this information into account at sentencing. Criminal Case, Doc. No. 91 at 65. The Court imposed a sentence of 74 months in jail, which was below the advisory guidelines range of 97 to 121 months, *id.* at 46. Because defense counsel presented the information requested, and the Court considered the information and imposed a sentence below the advisory sentencing guideline range, the record does not support Borden's contention that defense counsel was ineffective with respect to presenting mitigating factors.

Borden also has not established prejudice from defense counsel's failure to ask for a downward departure of two points. The Court determined that the offense level was 30 with a criminal history category of I. Criminal Case, Doc. No. 91 at 46. If the Court had reduced the offense level by an additional two points, as Borden argues defense counsel should have requested, the offense level would have been 28. The advisory sentencing guideline range for an offense level 28, criminal history category I is 78 to 97 months. As discussed above, the Court sentenced Borden

---

[9] Among other things, defense counsel noted that taxpayer witness Dubbin, a psychiatrist, sent a letter to the Court indicating that it was obvious to him that Borden was impaired.

to 74 months. Thus, there is no basis to conclude that Borden's sentence would have been less even if a two-point downward departure in the sentencing guideline range had been obtained.

### 6. Ex Post Facto Application of the Sentencing Guidelines.

Borden asserts that defense counsel was ineffective by failing to argue that "enhancements violated the Ex Port Facto clause . . . of the United States Constitution 1 section 9 clause 3 and Petitioner's 6th Amendment Right to trial by jury," citing *United States v. King*, 306 F. App'x 501 (11th Cir. 2009), and *Shalit v. United States,* No. 07-61928-Civ, 03-60030-Cr, 2008 WL 2025324 (S.D. Fla. May 9, 2008). Doc. No. 24 at 3. In *King*, the issue raised was whether use of the sentencing guideline manual in effect at the time of sentencing violated the ex post facto clause of the Constitution.[10]

To the extent that Borden contends that the Court erred by applying the sentencing guidelines in an advisory fashion to conduct that occurred before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), her argument is not supported by the law. The Eleventh Circuit has "repeatedly rejected the argument that the application of the remedial portion of *Booker* to conduct that occurred prior to *Booker* violates *ex post facto* principles . . . ." *United States v. Dean*, 487 F.3d 840, 853 (11th Cir. 2007).

In the present case, the Court applied the sentencing guideline manual in effect at the time Borden was sentenced. Presentence Report at 11. In *King,* the Eleventh Circuit noted that reliance on the sentencing guidelines manual in effect at the time of sentencing is proper unless the court

---

[10] *Shalit* addressed the ex post facto clause in the context of reliance on an amended wire fraud statute that increased the penalties. Amendment of the statutory maximum penalties is not an issue here.

determines that use of that manual would violate the ex post facto clause of the Constitution. 306 F. App'x at 518.

The ex post facto clause was not violated in Borden's case. The Eleventh Circuit has held that related offenses committed in a series will be sentenced together under the sentencing guidelines manual in effect at the end of the series. *Id.* at 519. The Indictment charged offenses beginning in October 1999 and continuing through April 2002. Doc. No. 1. Comparison of the 2002 edition of the sentencing guidelines manual and the 2006 edition of the sentencing guidelines manual reveals that the sentencing guideline sections used by the probation office to calculate the applicable advisory sentencing guideline range were not materially different. *See also id.* at 519 (finding that the relevant tax table guideline did not change between 2001 and 2006). Therefore, Borden has not established that use of the 2006 edition of the sentencing guidelines manual rather than the 2002 edition in effect at the time the acts charged in the Indictment were completed violated the ex post facto clause of the Constitution.

### 7. Objection to the Sentence Imposed.

Borden also contends that defense counsel was ineffective by failing to object to the length of the term of imprisonment imposed as too severe and to the $2,700 special assessment due to her limited financial circumstances. Borden's arguments are unavailing. A sentence within the penalty range prescribed by the statute is not reviewable through a § 2255 motion. *Nelson v. United States*, 709 F.2d 39, 40 (11th Cir. 1983). Similarly, imposition of a special assessment on a defendant who is indigent does not raise a constitutional issue subject to review through a § 2255 motion. *See United States v. Cooper*, 870 F.2d 586 (11th Cir. 1989). Therefore, because the sentence imposed

was within the statutory limits, defense counsel was not ineffective by failing to object to the sentence imposed or to provide additional evidence regarding Borden's ability to pay.

G.     *Ineffective Appellate Strategy.*

Borden contends that defense counsel was also ineffective by failing to challenge on appeal the Court's acceptance of evidence of estimated figures regarding tax loss at sentencing. This contention is not supported by the record. In the appellant's brief filed with the Eleventh Circuit, defense counsel challenged the reliance on estimated tax loss. Doc. No. 14-13 at 19.

H.     *Competency to Stand Trial.*

Borden seeks to supplement her § 2255 motion with a claim that defense counsel was ineffective for failing to challenge her competency to stand trial. Doc. No. 28. The United States opposes the motion, arguing that this is a new claim that was not timely raised. Doc. No. 34.

In relevant part, § 2255 requires the petitioner to file a motion to vacate, set aside, or correct an illegal sentence within one-year from the date the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). Claims raised in a motion to amend a § 2255 motion must likewise be filed within the one-year period. *See Farris v. United States*, 333 F.3d 1211, 1215-16 (11th Cir. 2003).

Borden's Judgment of Conviction was entered on June 14, 2007. Criminal Case, Doc. No. 77. The Eleventh Circuit affirmed the conviction and issued its mandate on April 11, 2008. *Id.*, Doc. No. 98. Therefore, Borden had one year from the date of the mandate to raise all grounds in support of her § 2255 motion.

Borden first alluded to the competency issue in her reply to the United States' response to her § 2255 motion. In the reply, she stated as part of Ground Four that "it was counsel's duty to

ensure that Petitioner was competent to stand trial in light of the extensive evidence concerning Petit[i]oner's competence at 'Time of Crime' and overwhelming evidence that Petit[i]oner was not competent to stand trial." Doc. No. 24 at 14. Because the reply was filed on September 28, 2009, more than one year after the Eleventh Circuit's mandate issued, the issue of competency to stand trial was not timely raised.

Borden does not contend that the competency issue should relate back to the filing of the original § 2255 motion. *See Farris*, 333 F.3d at 1215. Even if it did relate back, the record reflects that both the Court and defense counsel investigated whether Borden was competent to stand trial. On November 22, 2005, the United States filed a motion to determine Borden's mental competency to stand trial based on Borden's report to the Pretrial Services Officer that she had been diagnosed with bipolar disorder, she was hospitalized at a psychiatric hospital in 2000, and that she was taking medication for the condition and undergoing counseling. Criminal Case, Doc. No. 19; *see also* Criminal Case Doc. No. 17 at 5 (Pretrial Services Officer's oral report). At a hearing on the motion, the Court questioned Borden directly about her mental condition. *See* Criminal Case, Doc. No. 84. The District Judge stated, among other things, "I need to know that you feel that you're capable of rational thought so that you can intelligently assist [defense counsel], not just respond to what he asks, but to intelligently assist in your defense," to which Borden responded, "Oh, yes, sir. Oh, yes, sir. Yes, sir." Criminal Case, Doc. No. 84 at 9. Based on this information and colloquy with the Defendant, the Court denied the motion for a competency examination. *Id.* at 9.

Thereafter, defense counsel caused Borden to be examined by a psychiatrist to determine whether a factual basis existed to question Borden's competency to stand trial. The psychiatrist opined that Borden was competent to stand trial. Doc. No. 24-1 at 6.

In light of Borden's statements to the Court about her competency, and the medical opinion that Borden was competent, defense counsel had no factual basis to contest Borden's competency. Failing to file an unmeritorious motion is not ineffective assistance of counsel. *See Chandler*, 240 F.3d at 917-18.

## V. CONCLUSION.

It is **ORDERED** as follows:

1. The Court will hold an evidentiary hearing with regard to the following claim in the §2255 motion: that Petitioner received ineffective assistance of counsel with respect to whether to accept a plea agreement offered by the United States under which her maximum sentence would have been 36 months in jail and, but for this ineffective assistance, she would have accepted the plea agreement and pleaded guilty.

2. The United States Magistrate Judge is directed to appoint counsel on behalf of Petitioner.

3. The remaining claims asserted by Petitioner, including any allegations not specifically addressed herein, are without merit and are, therefore, **DENIED**.

4. The motion to supplement the § 2255 motion, Doc. No. 28, is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on July 15th, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE