UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LINDA ANN BORDEN,

       Petitioner,

v.                                  CASE NO. 6:09-cv-481-Orl-31DAB
                                       (6:05-cr-181-Orl-31DAB)

UNITED STATES OF AMERICA,

       Respondent.

_____

## ORDER

     This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) filed by Linda Ann Borden. On July 15, 2010, the Court entered an order denying relief on all of Petitioner's claims except claim three, regarding whether counsel rendered ineffective assistance by failing to advise her adequately about the plea agreement. *See* Doc. No. 38. On October 7, 2010, the Court conducted an evidentiary hearing on the claim. Thereafter, the parties filed briefs on the remaining claim. After consideration of the testimony and briefs, claim three is denied.

**I.**    *Analysis*

    *A.*    *The Testimony*

     Keith Jordan ("Jordan"), Petitioner's brother-in-law, testified that Petitioner met with her trial attorney, Clarence Counts ("Counts"), in Counts' office on several occasions to prepare for her trial. (Doc. No. 56 at 7-8.) Jordan indicated that he drove Petitioner to the majority of the meetings and attended approximately ninety percent of the meetings

with Petitioner. *Id*. at 8. Jordan stated that Petitioner was taking medication at that time and would sometimes fall asleep during the meetings. *Id*. at 9-10.

Jordan testified that Counts did not discuss the weight of the Government's evidence with Petitioner. *Id*. at 12. Jordan indicated that Counts told Petitioner about the Government's plea offer of three years of imprisonment when she asked him if there was a plea offer. *Id*. at 11. Jordan stated that Petitioner raised the issue of the plea offer with Counts at every meeting Jordan attended with Petitioner. *Id*. According to Jordan, Petitioner asked Counts if she should take the plea offer to which Counts responded that Petitioner should not do so because she had not committed fraud given that she did not mean to harm anyone. *Id*. at 11-12. Jordan indicated that Counts appeared very confident Petitioner would be acquitted. *Id*. at 12, 20.

Jordan testified that Petitioner was willing to take the plea offer; however, Jordan admitted that Petitioner always maintained her innocence because she did not intend to harm anyone. *Id*. at 12-13, 24-25. Jordan noted that Petitioner questioned Counts a final time on the day her trial began about whether she should take the plea offer and Counts was dismissive of her question. *Id*. at 13-14. Jordan further stated that Counts advised Petitioner that she was only subject to a five-year term of imprisonment if convicted. *Id*. at 15.

Cheryl Borden Jordan ("Borden Jordan"), Petitioner's sister, testified that she drove Petitioner to her first meeting with Counts, but she was not present during the meeting. *Id*. at 35. Borden Jordan, however, was present at the meeting between Petitioner and Counts

on the day the trial began. *Id*. at 31, 33. Borden Jordan said that Petitioner asked Counts if she should take the plea to which Counts responded, "Ms. Borden, I told you." *Id*. at 33. Borden Jordan also indicated that Petitioner asked Counts if she had a good case and Counts walked away from her. *Id*. at 34.

Petitioner testified that she met with Counts numerous times prior to trial and Jordan was present during the majority of the meetings. *Id*. at 39-40. Petitioner said that Counts did not discuss the defenses to the charges against her or what the Government would have to prove. *Id*. at 41. Petitioner indicated, however, that Counts told her that the Government would have to prove that she willfully intended to harm someone to be convicted of fraud and told her the Government had no evidence. *Id*. at 41-42.

Petitioner testified that Counts advised her that she was subject to three to five years of imprisonment if convicted and he never told her that she faced a three-year maximum sentence for each charge which could be ordered to run consecutively. *Id*. at 43. According to Petitioner, Counts said that the Government's plea offer was a bad deal because she was only facing three to five years if she proceeded to trial. *Id*. at 44. Petitioner indicated that she asked Counts if he could negotiate a better plea deal and he responded that the Government's offer was three years. *Id*. at 44-45. Petitioner testified that Counts told her that he thought she would be acquitted and that the Government did not have any evidence. *Id*. at 46, 52. Petitioner further said that Counts did not advise or encourage her to take the plea offer. *Id*. at 50. Petitioner testified that she would have taken the plea offer if she had known (1) the Government had a strong case, (2) the maximum penalty she faced, or (3) if

Counts had advised her to do so.  *Id*. at 52-53.

Petitioner admitted that Counts discussed the sentencing guidelines with her at their first meeting, but she said he never advised her of possible sentencing enhancements or potential sentencing reductions if she entered a plea.  *Id*. at 46-47.  Petitioner indicated that she was shocked when she saw the Presentence Investigation Report and realized she was facing 121 to 151 months of imprisonment.  *Id*. at 53.

Counts testified that he has been practicing law since 1978 and works for the Office of the Federal Public Defender.  *Id*. at 70.  Counts was appointed to represent Petitioner prior to the filing of the indictment.  *Id*. at 71.  Counts testified that he met with Petitioner numerous times for several hours each time, for a total of more than fifty hours in preparation for the trial.  *Id*. at 87-88.

He stated that he told Petitioner at their first meeting that she faced three years of imprisonment for each count charged and that the sentences could run concurrently or consecutively.  *Id*. at 73-74.  Counts indicated that he advised Petitioner a second time after the indictment was filed that she would be subject to a three-year sentence on each of the 27 counts and the sentences could run consecutively at the discretion of the court.  *Id.* at 83.  Counts further testified that at the first meeting he discussed with Petitioner a sentencing worksheet he had prepared based on the information available at that time, wherein he estimated that Petitioner was subject to a base offense level of 26 with a two level enhancement for sophisticated means and a two level enhancement for being in the business of preparing tax returns for a total base offense level of 30, criminal history category of one,

4

for a sentencing range of 97 to 121 months of imprisonment. *Id*. at 75-76. Counts further stated that he told Petitioner that if she accepted responsibility, she would receive a three-level reduction, making her offense level 27, criminal history category of 1, for a sentencing range of 70 to 87 months. *Id*. at 76-77. Counts said that Petitioner appeared to comprehend the potential sentence she faced and did not have any questions regarding it. *Id*. at 79-80.

Counts testified that he reviewed the indictment with Petitioner after she was arraigned and reviewed the discovery extensively with Petitioner. *Id*. at 83-87. Counts said that Petitioner always had an explanation for why she was correct and the Internal Revenue Service was incorrect. *Id*. at 80, 89. Counts stated that Petitioner brought him the books on which she relied to take the deductions that were deemed to be improper. *Id*. Counts testified that he believed, and advised Petitioner, that if she proceeded to trial, she would be found guilty based on the evidence against her. *Id*. at 89-90. Counts said that Petitioner rejected his opinion and said she was not guilty and was not going to plead guilty. *Id*. at 90. Counts stated that Petitioner insisted throughout the proceedings that she was innocent and she wanted a trial. *Id*.

Counts indicated that he told Petitioner of the Government's plea offer of three years and she refused to take the plea. *Id*. at 91. Counts testified that he subsequently advised Petitioner again of the plea offer at a meeting at which Jordan, Petitioner, and an investigator were present, and Petitioner rejected the offer. *Id*. at 91-92. Counts said that Petitioner did not ask his advice about whether to take the plea offer, but he told Petitioner, unsolicited, that she should take the plea offer based on the evidence. *Id*. at 95-96.

According to Counts, Jordan said to Petitioner that the plea offer sounded like a good deal and Petitioner should take it, but Petitioner refused to do so, saying, "I am not guilty, I am not going to plead guilty." *Id.* at 92. Counts testified that after this meeting, Petitioner did not bring up the plea offer anymore and she did not ask him about it on the day trial began. *Id.* at 95-96.

  B.    *Findings of Fact and Conclusions of Law*

  1. *The Law*

  The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

  As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

    *2.  The Facts*

    The testimony of Petitioner and Jordan conflicts with the testimony of Counts. Petitioner and Jordan testified that Counts did not advise Petitioner that (1) the Government had a strong case, (2) Petitioner faced three years of imprisonment for each charge with each sentence to potentially run consecutively, or (3) Petitioner should take the plea offer. Further, Petitioner and Jordan indicated that Petitioner was open to accepting a plea and would have done so had Counts advised her to do so.  Counts, however, testified unequivocally that he advised Petitioner (1) of the potential sentences she faced on two occasions, (2) that he thought she would be found guilty if she proceeded to trial,  and (3) that she should take the plea offer.

    Assessing the credibility of witnesses is reserved for the Court.  *See Castle v. Sangamo*

*Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact."). As an initial matter, the Court notes that it has considered the issue discussed at the sidebar during the instant hearing and finds that this issue does not serve to impeach significantly the veracity of Counts' testimony in this action. The Court's experience with Counts over the past ten years is that Counts has always been professional and candid with the Court and has always been prepared to competently represent his clients. Moreover, the evidence against Defendant was substantial, and it is inconceivable that Counts would have minimized her culpability. As such, after carefully considering the evidence and viewing the witnesses and their demeanor while testifying, the Court finds the testimony of Counts to be more credible than the testimony of Jordan and Petitioner.

The Court concludes that Counts met with Petitioner on multiple occasions, had extensive discussions with Petitioner about the Government's evidence and the strength of the Government's case, and correctly advised Petitioner of the sentences she faced if she proceeded to trial and was convicted. Counts' testimony that Petitioner maintained her innocence throughout the proceeding and insisted on going to trial is in line with this Court's perception from the trial. The Court believes that Counts advised Petitioner that she should take the plea offer given the weight of the evidence against her and Petitioner refused to do so. In sum, the Court concludes that Counts did not perform deficiently in advising Petitioner about the plea offer and Petitioner has not demonstrated that a reasonable probability exists that but for Counts' advice she would have entered a plea and

not proceeded to trial.  Therefore, claim three is denied.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Petitioner's motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:05-cr-181-Orl-31DAB and to terminate the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Criminal Case Doc. No. 108) pending in that case.

4.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[2]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers at Orlando, Florida this  9th   day of November, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sc 11/9
Counsel of Record

---

[2]Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.